UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RICHARD ALLEN FABEL,<br>RODNEY ROLLNESS,<br>JOSHUA BINDER,<br>RICKY JENKS, and<br>PAUL FOSTER<br><br>Defendants. | Case No. CR06-041L<br><br>ORDER DENYING MOTIONS TO SEVER |

## I. INTRODUCTION

This matter comes before the Court on defendant Fabel's "Motion for Severance of Defendants and Counts" (Dkt. #276), defendant Rollness and Binder's "Motion to Sever Counts 12, 13, 14, and 15" (Dkt. #280), defendant Binder's "Motion to Sever Defendant Rollness" (Dkt. #291), and defendant Jenks' "Motion to Sever Trial" (Dkt. #378). All four defendants seek to sever either defendants or counts from the upcoming trial.

## II. DISCUSSION

**A.     Severance of Defendants**

Defendants Jenks, Binder and Fabel each seek to sever their trials under Federal Rule of Criminal Procedure 14 to avoid the prejudicial impact of evidence introduced to prove

ORDER DENYING MOTIONS TO SEVER

allegations targeted only at their codefendants and to address Sixth Amendment concerns related to the Government's use of incriminating extra-judicial statements made by defendants Rollness and Binder.  For the reasons discussed below, defendants' requests for severance are denied.

   **1.     Prejudicial impact of "spillover" evidence**

Both Fabel and Jenks argue that they should have their trials severed because evidence relating to the murder of Michael Walsh, for which they are not charged, will prejudice the jury. Jenks also argues that evidence relating to the trafficking of stolen motorcycles will have a similar prejudicial effect.  In addition, both defendants contend that the introduction of 404(b) evidence relating primarily to Rollness and Binder will lead to undue prejudice as well.

It is well established that "there is a strong preference in the federal system for joint trials."  United States v. Decoud, 456 F.3d 996, 1009 (9th Cir. 2006).  Thus, a court "should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."  Zafiro v. United States, 506 U.S. 534, 539 (1993).

The Ninth Circuit has identified four factors for a court to consider in evaluating the prejudicial impact of a joint trial: (1) whether the jury may reasonably be expected to collate and appraise the individual evidence against each defendant; (2) the judge's diligence in instructing the jury on the limited purposes for which certain evidence may be used; (3) whether the nature of the evidence and the legal concepts involved are within the competence of the ordinary juror; and (4) whether [defendants] could show, with some particularity, a risk that the joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence. United States v. Fernandez, 388 F.3d 1199, 1241 (9th Cir. 2004).  The first two factors are the most important to a court's analysis. Id.

Analyzing the defendants' arguments in light of these factors, the Court concludes that severance is not required.  Though some evidence will be introduced that is relevant only to the

guilt of a subset of defendants, the Court believes that the jury will be able to compartmentalize the evidence specific to individual defendants. In evaluating this factor in a similar context, the Ninth Circuit has stated that "joint trial is particularly appropriate where the codefendants are charged with conspiracy, because the concern for judicial efficiency is less likely to be outweighed by possible prejudice to the defendants when much of the same evidence would be admissible against each of them in separate trials." Id. at 1242. This principle also carries over to the joint trial of RICO defendants:

> Proof of [RICO] elements may very well entail evidence of numerous criminal acts by a variety of persons, and each defendant in a RICO case may reasonably claim no direct participation in some of those acts. Nevertheless, evidence of those acts is relevant to the RICO charges against each defendant, and the claim that separate trials would eliminate the so-called spillover prejudice is at least overstated if not entirely meritless.

Id. (quoting United States v. DiNome, 954 F.2d 839, 843-44 (2d Cir. 1992), rev'd on other grounds, Rega v. United States, 263 F.3d 18 (2d Cir. 2001)).

Further, the use of "careful and frequent limiting instructions to the jury, explaining how and against whom certain evidence may be considered, can reduce or eliminate any possibility of prejudice arising from joint trial." Id. at 1243. Defendants have not offered a compelling reason why such limiting instructions would not be equally effective in this case. See United States v. Joetzki, 952 F.2d 1090, 1094 (9th Cir. 1991) ( "A defendant seeking severance based on the 'spillover' effect of evidence admitted against a co-defendant must also demonstrate the insufficiency of limiting instructions given by the judge."). Though certainly this case presents complexities, the Court believes that the factual questions and legal concepts at issue are within the competence of an ordinary juror. Further, "juries are presumed to follow their instructions." Zafiro v. United States, 506 U.S. 534, 540 (1993). As such, the Court concludes that the danger of prejudice due to the "spillover" of evidence, including 404(b) evidence, is insufficient to justify severance for any of the defendants.

    **2.**    **Sixth Amendment**

The Court is more concerned about issues of severance relating to potentially

ORDER DENYING MOTIONS TO SEVER

1 incriminating statements by codefendants.  In <u>Bruton v. United States</u>, 391 U.S. 123, 135-37
2 (1968), the Supreme Court held that a defendant is deprived of his Sixth Amendment right to
3 confront his accuser when the incriminating confession of a nontestifying codefendant is
4 introduced at their joint trial.  Not all non-testifying codefendant statements, however, are barred
5 by the Sixth Amendment.  For instance, a statement, not incriminating on its face, that only
6 implicates the defendant when evaluated by the jury in connection to other admitted evidence is
7 admissible.  <u>Richardson v. Marsh</u>, 481 U.S. 200, 211 (1987) ("the Confrontation Clause is not
8 violated by the admission of a nontestifying codefendant's confession with a proper limiting
9 instruction when, as here, the confession is redacted to eliminate not only the defendant's name,
10 but any reference to his or her existence.").  That being said, the Government cannot evade
11 <u>Bruton</u>'s restrictions by simply removing a defendant's name from a statement and replacing it
12 with "an obvious blank, the word 'delete,' a symbol," or any other substitution that would
13 "similarly notify the jury that a name has been deleted."  <u>Gray v. Maryland</u>, 523 U.S. 185, 195
14 (1998).  The Ninth Circuit has made it clear that simply substituting a defendant's name with a
15 neutral pronoun is also constitutionally deficient "if it is obvious that an alteration has occurred
16 to protect the identify of a specific person."  <u>United States v. Peterson</u>, 140 F.3d 819, 822 (9th
17 Cir. 1998).

18    Here, defendants Fabel, Jenks and Binder have identified a number of statements that
19 they believe violate <u>Bruton</u>.  In response, the Government has offered a number of proposed
20 redactions.  The question for the Court in evaluating these redactions will be whether the
21 redactions render the statements more similar to those that were deemed permissible in
22 <u>Richardson</u> or to those deemed unconstitutional in <u>Gray</u> and <u>Peterson</u>.  Though the matter will
23 be taken up more extensively in conjunction with defendants' motions in limine, the Court is not
24 persuaded at this time that the redactions offered by the Government are sufficient to avoid
25 making the identity of certain defendants obvious to the jury.  For instance, the Government
26 contends that the Rollness statement indicating that the decision to murder Michael Walsh

ORDER DENYING MOTIONS TO SEVER

1  "came from higher up (Smilin')" can be cured of any constitutional infirmities by simply
2  removing the reference to "Smilin'." Response to Fabel Motion at p. 11. Given Fabel's position
3  in the Hells Angels, the Court believes this redaction raises concerns very similar to those
4  presented in Peterson where the Ninth Circuit found that a redacted statement made it clear that
5  the "codefendant was pointing an accusatory finger at someone and it was not difficult for the
6  jury to determine that that person was the other defendant on trial." 140 F.3d at 822. In order to
7  avoid severance, the Government will need to further refine its redactions to ensure that
8  defendants' identities cannot be inferred by ordinary jurors. If it cannot do so, it must either
9  sever those defendants implicated by the statements or abandon the statements all together. At
10 this time, however, defendants' efforts to sever based on Bruton are denied. If the Government
11 is unable to adequately address the Court's concerns regarding redactions, the Court will take up
12 the matter again at a later time.

**3. Speedy Trial**

Defendant Fabel also seeks to have his trial severed because he has not joined his codefendants' requests to continue the trial.[1] Under the Speedy Trial Act, a grant of continuance to one defendant is excludable time for a codefendant. United States v. Butz, 982 F.2d 1378, 1381 (9th Cir. 1993). Fabel's request for severance based on the Speedy Trial Act is denied.

**B. Severance of Counts**

**1. Severance of Counts 12-15**

Defendants Rollness, Binder and Fabel also seek to sever counts 12-15 of the Third Superceding Indictment. They argue that the allegations contained in these counts relate only to actions taken after Rollness and Binder left the Hells Angels and that they are therefore too far removed from the rest of the indictment to be joined in the Government's RICO case. Federal Rule of Criminal Procedure 8(a) states that:

> The indictment or information may charge a defendant in separate counts

---

[1] On December 7, 2006 the Court continued the trial to March 5, 2007

ORDER DENYING MOTIONS TO SEVER

>with 2 or more offenses if the offenses charged . . . are of the same or similar character, or are based on the same act or transaction, or are connected or constitute parts of a common scheme or plan.

The Government argues that joinder is appropriate because the conduct described in Counts 12-15 are part of "a common scheme or plan" and the crimes are of "the same or similar character" to the activities described in the rest of the indictment. The Court agrees.

In determining whether counts arise from a common scheme or plan the Court asks "whether 'commission of one of the offenses . . . either depended upon . . . or necessarily led to the commission of the other; proof of one act . . . either constituted . . . or depended upon proof of the other.'" United States v. Jawara, No. 05-30266, 2007 WL 121297, at *5 (9th Cir. Jan. 19, 2007) (quoting United States v. Halper, 590 F.2d 422, 429 (2d Cir. 1978). Where the joined counts are logically related and have a large amount of overlapping proof, joinder is appropriate. Id.  The Government has identified a substantial number of witnesses who would testify at both trials if the counts were severed. The Court believes this weighs in favor of joinder. See Id. (Jawara involved two offenses where overlapping evidence was minimal).

The similarity in the character of the crimes alleged in counts 12-15 and those alleged in the rest of the indictment also weighs in favor of joinder. In Jawara, the Ninth Circuit established the factors to be considered in evaluating the propriety of joinder under this prong of Rule 8(a):

>We consider it appropriate to consider factors such as the elements of the statutory offenses, the temporal proximity of the acts, the likelihood and extent of evidentiary overlap, the physical location of the acts, the modus operandi of the crimes, and the identity of the victims . . . .

Id. at *10. The similar nature of the joined offenses must be apparent on the face of the indictment. Id.

Here, the similarity of the crimes is apparent on the face of the indictment. The crimes alleged in counts 12-15, counts 1, 2, 6-11 and racketeering acts 4-7 all involve the trafficking of stolen motorcycles in the Northwest by defendant Rollness between January 2001 and January 2004. Because of the similarity of the offenses, the similarity of the location of these offenses,

ORDER DENYING MOTIONS TO SEVER

the similarity in modus operandi and the temporal proximity of the acts, there will be substantial evidentiary overlap between the counts. All of these facts also support joinder.

Nor is severance justified under the principles contained in Federal Criminal Rule of Procedure 14. In order to prevail on a motion to sever under Rule 14, the defendant must demonstrate that joinder "was so manifestly prejudicial that it outweighed the dominant concern with judicial economy and compelled exercise of the court's discretion to sever." United States. v. Armstrong, 621 F.2d 951, 954 (9th Cir. 1980). The Court does not believe that joinder of the counts 12-15 is manifestly prejudicial. In any event, limiting instructions will suffice to avoid any risk of prejudice that may exist. Zafiro v. United States, 506 U.S. 534, 539 (1993) ("less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice.").

### 2. Severance of Racketeering Act 6A

Fabel also seeks to sever racketeering act 6A which involves the extortion and trafficking of alleged victim B.T.'s stolen motorcycle by Rollness. In doing so, Fabel contends that "[t]here is no evidence that this incident had anything whatsoever to do with the Hells Angels motorcycle club or any of the other defendants in this case." Fabel Motion at p. 13. The Government argues, however, that there is evidence to establish that Fabel was indeed involved in the extortion and threat at issue in racketeering act 6A. The Government also contends that even if Fabel were not involved, the evidence would nevertheless be admissible because of its relevance to the Government's broader RICO case. The Court agrees that racketeering act 6A is properly joined. Fabel's request to sever is therefore denied.

ORDER DENYING MOTIONS TO SEVER

## III. CONCLUSION

For the foregoing reasons, defendants' motions to sever (Dkt #276) (Dkt. #280) (Dkt #291) (Dkt. #378) are DENIED.

DATED this 30th day of January, 2007

/s/ Robert S. Lasnik
Robert S. Lasnik
United States District Judge